**Bernice FULLER, Appellant,**

v.

**William RAHILL and H. B. Shadid, d/b/a The O.K. Market, Appellees.**

**No. 43667.**

Supreme Court of Oklahoma.

April 11, 1972.

Rehearing Denied May 16, 1972.

Lampkin & Wolfe, by John W. Norman, Oklahoma City, for appellant.

Cook & O'Toole, Oklahoma City, for appellees.

BARNES, Justice:

In this slip and fall case, Appellant, hereinafter referred to as "plaintiff", sued Appellees, William Rahill and H. B. Shadid, d/b/a The O. K. Market, hereinafter referred to as "defendants", for damages on account of personal injuries she allegedly received as a result of a fall which began when she slipped on fruit on the floor of their said Market while in that store grocery shopping. The District Court, hereinafter referred to as "trial court", sustained defendants' demurrer to plaintiff's evidence. On plaintiff's appeal from said ruling, the Court of Appeals, Division No. 2, reversed it. On certiorari to this Court, the decision of the Court of Appeals is reversed and the order and/or judgment of the trial court is affirmed.

The fruit on which plaintiff slipped was described in plaintiff's testimony as "blue plums" and by another of the store's customers, Mrs. Lucretia Hendrix (who was plaintiff's principal witness by deposition), as a "prune or something . . ." There was no direct evidence as to just how the offending fruit got on the floor, but, from the evidence as a whole, it may be reasonably inferred that it fell there from a so-called "produce rack" extending along one of the store's aisles, where various kinds of fresh fruits and vegetables were displayed so that customers could walk along the aisle, view them, and select for themselves (self service) those which they desired to transport to one of the checkers at the front of the store for tallying and purchase.

In view of the absence of any evidence to show that the defendants, or any of their store employees, placed the fruit on the floor, or caused it to fall there, the crucial question in the case became: Was the fruit lying on the floor before plaintiff walked down the aisle along this produce rack, and, if so, was it there under such circumstances that the trial court should have overruled defendants' demurrer to plaintiff's evidence and submitted the case for the jury's determination as to whether or not the fruit had been on the floor a sufficient time, before plaintiff slipped on it, to have imparted constructive notice of its presence there, to have enabled them

to remove it or to warn the customers of its presence?

Plaintiff's argument for reversal on appeal is premised mainly upon certain oral remarks the Trial Judge made in announcing his ruling on the demurrer. Plaintiff interprets these remarks as showing that the Judge found, in effect, that the evidence showed the prune or plums had lain on the floor where plaintiff stepped on it, and lost her footing, for fifteen minutes before this accident, and concluded that this was not a sufficient time for defendants to be found to have had constructive notice of its presence there. Plaintiff argues that whether or not fifteen minutes was a long enough period to have given defendants constructive notice of the fruit's presence on the floor was a question of fact properly determinable by the jury, and that the Judge exceeded a trial court's proper prerogative in purporting to decide that question. (In reversing the trial court, the Court of Appeals appears to have upheld this argument.) To the contrary, defendants contend, in brief substance, that plaintiff misinterpreted the Trial Judge's remarks, and that he did not say, or find, that the fruit had been on the floor any period of time before plaintiff's slip and fall occurred.

◼ We need not engage in any discussion, or undertake any determination, of the correct interpretation of the Judge's remarks. However incorrect his reasons may have been for said ruling, if, on the basis of plaintiff's evidence, defendants' demurrer to it should have been sustained, we will affirm that court. See Winslow v. Watts, Okl., 446 P.2d 598. As to related matters, notice the discussion and citations in Thompson v. Inman, Okl., 482 P.2d 927, 937.

Accordingly, we have examined said evidence to determine whether it shows that the fruit was on the floor fifteen minutes (as plaintiff says it does), or any other period of time, prior to the instant plaintiff stepped on it. The only basis for answering this question is found in excerpts of plaintiff's and Mrs. Hendrix' testimony. The excerpt from plaintiff's testimony is as follows:

"Q Were you involved in an accident on August the 17th, 1968?

"A Yes, sir.

\* \* \* \* \* \*

"Q And did it occur approximately 2:30 in the afternoon?

"A It was about that time.

\* \* \* \* \* \*

"Q Describe in your own words, Mrs. Fuller, how the accident happened, . . . ?

"A \* \* \* I was walking down the aisle . . . I was looking at some canned goods, some vinegar and stuff over there, and . . . —all at once my feet slipped out from under me and my bottom part hit the floor, and my left hand hit a push cart on the opposite side of me, a lady was pushing a cart.

"Q All right, . . . could you determine what you had fallen on?

"A No, I didn't determine what I had fell on until I had got up.

\* \* \* \* \* \*

"Q When did you ever look around to see what you had fallen on?

"A After I got up, she said what did you slip on? I said I don't know, and I looked around after I had gotten up and it was some plums, and I seen the juice and the plums, some blue plums.

"Q All right, can you describe these plums for me, how they looked after you saw them?

"A They looked kind of rotten.

"Q Did they appear to have been stepped on?

"A Yes.

\* \* \* \* \* \*

"Q \* \* \* why didn't you see the plums before you stepped on them?

"A I was shopping; I was looking at the merchandise.

*    *    *    *    *    *

"CROSS EXAMINATION

*    *    *    *    *    *

"Q    * * * How long had you been in the store?

"A    Well, I don't exactly know how long, because I didn't time myself, but I hadn't been in there too long.

*    *    *    *    *    *

"Q    Is that a clean store?

"A    Yes, it's a nice store."

The excerpt from Mrs. Hendrix' testimony is:

"Q    * * * How long had you been in the market prior to Mrs. Fuller's fall?

"A    I had been in there about *ten or fifteen minutes*.

*    *    *    *    *    *

"Q    * * * At the time she slipped and fell, do you know whether there was anything on the floor?

"A    * * *—I didn't see nothing.

"Q    Now, after she fell, what did you see?

"A    She had her fott going out like that, and this prune was up under it. * * *

*    *    *    *    *    *

"Q    Only one?

"A    That's all I noticed, . . .

"Q    Where was it?

"A    * * * . . . ; it had scooted out from under her foot, where she fell.

*    *    *    *    *    *

"Q    What was the condition of this prune?

"A    It was squashed where she had stepped on it.

*    *    *    *    *    *

"Q    You said you were in the store about ten fifteen minutes?

"A    Yes.

"Q    Were you on the produce aisle all this time?

"A    Yes, just walking by, picking up stuff * * *.

"Q    Checking it to see if it was ripe, and to see if you wanted to buy it, and that sort of thing?

"A    Yes.

*    *    *    *    *    *"

(Emphasis added)

As will be seen, the above quoted evidence furnishes no basis for a reasonable inference that the plum, prune, or plums had been on defendants' market floor a period of fifteen minutes, or any other period of time, prior to plaintiff's slip and fall. The only period of time Mrs. Hendrix' testimony concerns is the period that she was in the store. Rather than inferring from her testimony that the fruit had been on the floor ten or fifteen minutes before plaintiff's slip and fall, a more reasonable inference from her testimony that she had been in the store and had walked up and down the produce aisle that long, without seeing anything on the floor, would be that the fruit was not there—except for the fact that, according to her, she had not noticed the floor. For all that the record shows, the prune or plum, on which plaintiff stepped and slipped, may have fallen to the floor the instant she walked down that aisle, or only a moment before.

For the reasons indicated, most of plaintiff's argument and the Oklahoma cases cited therein are inapplicable to the present case. Those Oklahoma cases were discussed and distinguished from, a case much like the present one, in Kassick v. Spicer, Okl., 490 P.2d 251. Because our opinion in that case answers most of plaintiff's argument in this case, we find it unnecessary to reiterate that we there said. That opinion clearly demonstrates this Court's adherence to what was there referred to as "the rule announced in" Safeway Stores, Incorporated v. Feeback, Okl., 390 P.2d 519. For this reason, we do not regard cases from jurisdictions not adhering to this rule as persuasive authority here.

■ We agree with the Trial Judge's view that plaintiff's testimony as to the

"kind of rotten" appearance of the fruit she stepped on had no probative value on the question of how long it had been on the floor when plaintiff stepped on it. For all that the record shows, it may have attained that appearance while still on the produce rack, and did not fall on the floor until it began to look "kind of rotten." Or it may have given that appearance from "being squashed where she (plaintiff) had stepped on it" (quoting from Mrs. Hendrix' testimony).

For the reasons above indicated, it is our opinion that the trial court properly sustained defendants' demurrer to plaintiff's evidence. Said ruling and judgment is therefore affirmed and the decision of the Court of Appeals, Division No. 2, reversing it and remanding this case for a new trial is hereby reversed.

BERRY, C. J., DAVISON, V. C. J., and JACKSON, IRWIN and LAVENDER, JJ., concur.

WILLIAMS and McINERNEY, JJ., concur in result.

HODGES, J., dissents.