Myrtle GLOVER, Appellant,

v.

MONTGOMERY WARD AND COMPANY,
a corporation, Appellee.

No. 46511.

Court of Appeals of Oklahoma,
Division No. 2.

July 9, 1974.

Rehearing Denied Oct. 10, 1974.

Certiorari Denied June 3, 1975.

Released for Publication by Order of Court
of Appeals June 5, 1975.

Ashton & Ashton, Lawton, and Lawrence H. McMillin, Oklahoma City, for appellant.

Lawton Burton and L. Myron Burton, Burton & Burton, Lawton, and Granville Tomerlin and Jack High, Tomerlin & High, Oklahoma City, for appellee.

BACON, Judge.

The record reflects that on Saturday, November 1, 1969, appellant entered appellee's retail store in Lawton, Oklahoma.

This was a particularly busy day because it was the first day of the month, a Saturday, utility payments were heavy, and it was also payday at Fort Sill. The traffic in the store was very heavy. Appellant entered the store and stood in line some 20 minutes to pay her utility bills, a collection service apparently provided for appellee's customers' convenience. About 1:30 p. m., appellant was walking through a crowded aisle beside the cafeteria when suddenly she fell. Naturally she was embarrassed; she started to get back up and became aware of something wet and clear on her hands and the back of her slacks. Appellant was removed by ambulance and it is uncontested her injuries have rendered her "almost totally disabled for life." After extensive stays in numerous hospitals, appellant filed suit alleging negligence on appellee's part.

The record shows the store was approximately 35,000 square feet and employed 200 persons. The testimony was appellee had five maintenance personnel who cleaned the floor each morning before the store opened at 10 a. m. The maintenance supervisor testified he had five persons working in maintenance. Two were full-time employees and three were college students who worked part-time, one of which was described as "sorta on the lazy side" and referred to in the record as "Lazy Eddy." On several occasions additional maintenance help requested of the management was refused because they "could not afford it." The maintenance personnel did the floor work, took care of fixtures, lighting, the parking lot, service station, filters and other odd jobs including occasionally carrying out heavy packages for customers.

The testimony was that the floors were cleaned every morning prior to opening. No routine inspection or procedure was followed, except each employee was to keep a lookout for problems in his department, with the personnel in the cafeteria cleaning the floor in that area. Soft drinks were sold in the cafeteria, and drinks called "Iceys" were sold in a different area of the store. The testimony also was that there was frequent spillage throughout the store, especially by children with "Iceys." The busier the day the more the spillage. Appellant fell in the aisle at a point where there was a gateway going into the cafeteria.

The testimony showed that on this particularly busy Saturday all maintenance personnel left the store at opening time, that is, 10 a. m., except Lazy Eddy who remained to do whatever was required of the maintenance department the rest of the day. Normally when a department employee needed maintenance he would call an operator who would then call maintenance personnel over a loud speaker system in the store. Usually maintenance would arrive at the problem area within five minutes, but on one occasion in the past there was a lapse of some 45 minutes before maintenance arrived.

The store personnel testified they did not see anything on the floor around appellant on which she could have slipped, but stated on cross-examination they did not look under her or feel under her to ascertain the presence of any foreign material.

The floor where appellant fell was highly polished, light in color and had a wavy appearance as though water was on it. There was no evidence what the substance was appellant had slipped on or how long it had been there. Appellant testified it appeared to her to be water.

At the close of appellant's case, appellee's demurrer, like its subsequent motion for directed verdict, was overruled. The jury returned a verdict for appellant for $25,000. The trial court later, however, sustained appellee's motion for judgment notwithstanding the verdict.

In sustaining appellee's motion, the trial court included the following in its findings of fact:

"4. At the conclusion of Plaintiff's evidence, when demurrer to the evidence was under consideration, and in Plaintiff's brief, it was concead-

ed [sic] that 'the Plaintiff has, admittedly, no direct evidence as to how long the liquid had been on the floor.'

.  .  .  .  .  .

"6. With the exception of the evidence of Plaintiff as to the nature and extent of her injuries, the bulk of testimony taken at the trial was on the question of maintenance and inspection by the employees of the Defendant, and in this connection there was no direct evidence of a lapse or failure on the part of Defendant or its agents on the date of the accident, from the established routine practiced by the Defendant both before and after the accident."

Appellant takes the position that under Safeway Stores, Inc. v. Keef, Okl., 416 P. 2d 892 (1966), appellant need not have direct evidence of how long the substance had been on the floor to recover in negligence. Appellee, on the other hand, takes the position that to recover in this slip and fall case, appellant's evidence had to show how long the substance had been on the floor, relying principally upon Safeway Stores, Inc. v. Feeback, Okl., 390 P.2d 519 (1964). Also argued extensively by both parties are Fuller v. Rahill, Okl., 496 P.2d 785 (1972); Kassick v. Spicer, Okl., 490 P.2d 251 (1971), and J. C. Penney Co. v. Barrientez, Okl., 411 P.2d 841 (1965). Since these cases contain the applicable principles of law in Oklahoma pertaining to slip and fall cases, we will discuss these five cases and one other, not mentioned by the parties, which is the latest case on the matter in Oklahoma, Williams v. Safeway Stores, Inc., Okl., 515 P.2d 223 (1973).

In *Feeback* (1964), the first of these six cases, the plaintiff slipped and fell on some carrots lying on the aisle floor of the defendant retail store. The plaintiff prevailed in the trial court but the Oklahoma Supreme Court reversed with directions to grant a new trial. In reversing the court wrote the following syllabus:

"A customer of a retail store injured in a fall caused by slipping on vegetables lying on the store floor may not recover damages from the owner or manager of the store without proof that such vegetables were negligently left there by owner or some employee or had been there for sufficient time after the latter had actual or constructive knowledge thereof to have removed it in the exercise of ordinary care."

The court found the plaintiff's evidence did not show the defendants had either actual or constructive notice of the condition which caused the plaintiff's fall, nor did the plaintiff offer any evidence as to how the carrots came to be on the floor or how long they had been there.

Next came *Barrientez* in 1965, where the plaintiff slipped and fell on a round object on a stairway in the defendant retail store. The stairway was covered with other debris such as cigarette butts and papers. The plaintiff prevailed in the trial court and the Oklahoma Supreme Court reversed and remanded the cause for a new trial on unrelated matters. There was no direct evidence as to how the object got on the stairway or how long it had been there.

A significant fact in *Barrientez* is that the defendant store *did not sell* candy or marbles. There was an abundance of testimony that the floor was cleaned daily prior to opening, then usually about three times during the day. The plaintiff fell on the stairway about 7 p. m. and the evidence showed no cleaning was usually done after 5 p. m. unless the janitor was on duty. One of the defendant store's employees testified he ascended the stairway about 10–15 minutes before the plaintiff fell and did not see anything unusual. In the opinion, the court recognized the defendants' contention that there was a "void" in the plaintiff's evidence. The court cites *Feeback* and other cases and distinguishes them on the basis that in those cases there *was no* evidence from which it could be concluded that the defendants knew or should have known that a dangerous condi-

tion existed. The court goes on to say "if plaintiff's testimony is to be believed . . . it may be inferred that virtually the same littered condition of the involved stairway existed at least 30 minutes before her fall, that existed at the moment of it." (There was testimony the stairway was littered 30 minutes before the plaintiff's fall.) "Of course," continues the court, ". . . the cigarette butts and pieces of paper, the only 'testified-to' (and presumably the only obvious) portions of this debris, or litter, did not cause plaintiff's fall; but the question is: Should the presence of such litter on the stairway have forewarned, or furnished notice, of the existence of a dangerous condition on it, to the Penney Store's employees whose duties included concern with foreign objects and dangerous conditions on the store's floors and/or stairways? Disregarding the evidence as to whether the Penney Company had any of its janitorial crew on duty at the store after 5:00 P.M. on the nights it stayed open until 8:30 P.M., *and aside from whether or not one of the issues for the jury was whether failure to do so would constitute a 'careless general practice', which could have rendered it liable for the consequences of the plaintiff's fall* (see the discussion in Mahoney v. J. C. Penney Co., 71 N.M. 244, 377 P.2d 663, 671–674) and assuming that it was necessary (in view of the record as a whole) for plaintiff to introduce evidence tending to show constructive notice to defendants of the presence on the stairway, before the accident, of the foreign object which caused it (in this connection notice Bozza v. Vornado, Inc., 42 N.J. 355, 200 A.2d 777) we believe the evidence in this case was sufficient for that purpose. As stated in Bridgman v. Safeway Stores, Inc., 53 Cal.2d 443 [2 Cal.Rptr. 146], 348 P.2d 696, 697:

'* * * It is the general rule that the proprietor of a store who knows of, or by the exercise of reasonable care, could discover an artificial condition upon his premises which he should foresee exposes his business visitors to an unreasonable risk, and who has no basis for believing that they will discover the condition or realize the risk involved, is under a duty to exercise ordinary care either to make the condition reasonably safe for their use or to give a warning adequate to enable them to avoid the harm. * * *.'

If the above rule is applied to the present case, the accumulation of cigarette butts and pieces of paper (and, in reasonable contemplation, other less obvious 'foreign' objects dropped by its invitees) on the Penney Store's stairway, must be regarded as 'an artificial condition'; and—while the particular named kind of litter (cigarette butts and paper) did not cause plaintiff's fall—we think the existence of that sort of condition, if the Penney Company's employees hereinbefore referred to, saw, *or in the exercise of reasonable care and attention to their duties, should have seen it, was sufficient to warrant submitting this case to the jury* on the question of whether defendants had notice (actual or constructive) of a dangerous condition on the stairway, in sufficient time before plaintiff's accident, to have removed such hazard. It was for the jury to decide whether reasonably prudent employees, 'standing in their shoes', would have anticipated that there might be hidden among such litter, or, at least, not obvious to the ordinary invitee-customer using such stairway, a small, round object like the one plaintiff testified she slipped on. Though the perceptible litter (cigarette butts and pieces of paper) may not have been dangerous to customers of the store, if an inspection of it might have revealed more dangerous objects, such as the subject one, interspersed among, and perhaps hidden by, it, then the litter was sufficient for the purpose of notice. The Penney Company's duty was not limited to conditions known to be dangerous, but extended to those which, by the exercise of reasonable care, might have been found dangerous." (emphasis ours) The court concluded the trial court did not

err in overruling defendants' motion for directed verdict saying:

"*Where reasonable minds may differ in their inferences and conclusions therefrom, the question, like the broader issue of whether defendants have performed their duty should be left to the jury.* [i. e., whether defendant's 'artificial condition' was actual or constructive notice sufficient to send the cause to the jury.]" (emphasis ours)

The court said in the syllabi:

"1. As a general rule, the proprietor of a store who must, or by the exercise of reasonable care, could discover an artificial condition upon his premises which he should foresee exposes his business visitors to an unreasonable risk and who has no basis for believing that they will discover the condition or realize the risk involved, is under a duty of exercising ordinary care either to make the condition reasonably safe for their use or to give warning adequate to enable them to avoid the harm.

"2. This duty is not limited to conditions known to be dangerous but extends to those which might have been found dangerous by the exercise of ordinary care.

"3. Under the circumstances of this case, evidence that a store's stairway was littered, or strewn, with cigarette butts and papers, as much as 30 minutes before plaintiff slipped and fell on said stairway, was sufficient for submission of the case to the jury on the question of defendants' constructive notice that a dangerous condition existed there."

Thus, up to this point, *Feeback* and *Barrientez* can easily be reconciled, though they are distinguishable. In *Barrientez,* unlike in *Feeback,* there *was* evidence from which it could be concluded that the defendants knew or should have known that a dangerous condition existed.

Then in 1966 the court handed down *Keef,* the case appellant relies upon in the present case. In *Keef,* the plaintiff slipped and fell on a banana in the defendant's retail store. The Oklahoma Supreme Court affirmed the trial court's judgment for the plaintiff. The defendant argued in *Keef* that there *was no* evidence defendant put the banana on the floor nor was there any evidence concerning how long it had been there. The court found the trial court did not err in refusing to give the defendant's requested instruction pertaining to its defense. The court said:

"*The instant action is* not *based on the grounds that defendant* negligently inspected the premises but that it *negligently failed to inspect the premises.* In this connection, plaintiff alleged, inter alia, that defendant 'failed to inspect its floor at reasonable intervals, so as to discover the banana on the floor, and remove it.'" (emphasis ours)

In *Keef* the plaintiff's evidence showed the store had not been swept since 8:30 a. m. (the plaintiff fell at 5:45 p. m.) and that there was no customary or routine sweeping except in the mornings. The store manager and produce manager had left the store about 5 p. m. and the assistant manager had the day off; that the man in charge of the store was a "third man" or assistant manager of the store; that he and "only five other employees were at the store at the time of the accident," and none of the employees had policed the area. The court concludes:

"*We can only conclude that under the circumstances herein presented, the question as to whether defendant exercised ordinary care in respect to his duty to his customers, and in particular, the plaintiff, was a question of fact for the jury.* We therefore hold the trial court did not err in overruling defendant's demurrer to plaintiff's evidence and its motion for a directed verdict." (emphasis ours)

The court distinguished *Feeback* by saying in *Feeback* there was evidence the defendants continually policed the area whereas in *Keef* the defendant did not. (In *Barrientez* there was evidence defendants

knew or should have known a dangerous condition existed.)

Next came *Kassick* in 1971 where the plaintiff fell on a grape in the defendant retail store. The Supreme Court of Oklahoma reversed the trial court's judgment for the plaintiff and entered judgment for the defendants. There was no evidence as to how the grape got to the floor or how long it had been there. There *was evidence the floor had been swept* at 2 p. m., *inspected* about 3:45 p. m. and plaintiff fell shortly after 4:15 p. m. The court went on to say:

"*Absence of evidence tending to establish how long the grape had been on the floor at the time plaintiff fell does not necessarily mean that the trial court erred in submitting the case to the jury, if there was other evidence tending to establish negligence* on the part of defendants. In Safeway Stores, Inc. v. Keef, Okl., 416 P.2d 892 (1966) . . . [*t*]*here was no evidence as to how long the banana had been on the floor* at the time plaintiff fell. In that case, plaintiff's action was not based on the grounds that the banana had been on the floor for a sufficient length of time for defendant to have discovered its presence and removed it, or that defendant negligently inspected the premises, *but that defendant negligently failed to inspect the premises*. . . .

"In affirming the judgment in favor of plaintiff in Keef, we said that *under the circumstances* presented, *the question as to whether defendant exercised ordinary care in respect to its duties to its customers,* and in particular, to the plaintiff, *was a question of fact for the jury.* We find nothing in Keef which modifies or relaxes the rule announced in Feeback, supra, that the burden is upon the plaintiff customer to prove negligence on the part of the defendant store owner or his employees . . . .

"*In the case at bar* . . . *there is no evidence tending to establish that de-fendants negligently inspected the premises or negligently failed to inspect the premises.* Stated in another way, there is no evidence tending to establish negligence on the part of defendants." (emphasis ours)

Then in 1972 came *Rahill* where the plaintiff slipped on a plum about 2:30 p. m. in the defendant's retail store. The Supreme Court of Oklahoma affirmed the judgment of the trial court which sustained a demurrer to the plaintiff's evidence. The evidence showed a witness had been down the aisle 10–15 minutes before the plaintiff fell and saw nothing on the floor. The court said a reasonable inference to be drawn is the plum had just fallen when the plaintiff got there. The court cites *Feeback* and *Kassick,* but *Keef* is not mentioned for the obvious reason that a question of negligent inspection or negligently failing to inspect was not present in the case.

The most recent case was *Williams,* handed down in 1973, in which the plaintiff slipped on some water. The Supreme Court of Oklahoma reversed a judgment for the plaintiff and sent the cause back for a new trial on damages only because the trial court erroneously admitted certain bills unrelated the the plaintiff's injury. Defendants contended the evidence was insufficient to support an inference they negligently operated or maintained the produce case (from which the water came) *or* "the water was on the floor long enough defendants could be held to have constructive notice of it." Two employees of defendant supermarket testified they inspected the produce case or walked by the area 15 minutes before the fall and saw no water. The court concluded:

"The jury could then have found that in the exercise of ordinary care defendants should have taken some action to prevent water from running onto the aisle on occasions when a drain did stop up.

"However, defendants argue the uncontradicted evidence introduced at this trial indicates drains under the produce case

were not stopped up on the day of the accident.

"In Mazda Oil Corp. v. Gauley, Okl., 290 P.2d 143, we held in paragraph 2 of the syllabus:

'An inference which may be reasonably drawn from circumstantial evidence is proof and does not fade away in the light of positive proof to the contrary.'"

The court approved the instructions given by the trial court which included instructing that the plaintiff was entitled to recover if he proved the defendants were negligent in construction, inspection or maintenance.

■ A close study of all the aforementioned cases leads us to the conclusion that a storekeeper owes his customers the duty to exercise ordinary care to inspect, maintain and keep aisles, passageways and such other parts of the premises as are ordinarily used by customers in a reasonably safe condition; that he must warn customers of dangerous conditions which are known or which reasonably should be known to the storekeeper, but not the customer; that he is not an insurer; and that the question of whether the storekeeper has been negligent in respect to his duty is usually a question of fact for the jury. Safeway Stores, Inc. v. Keef, supra.

■ We further conclude that these cases place the burden of proof on the plaintiff in a slip and fall case to show the item causing the fall was negligently left there by the storekeeper or some employee or had been there for sufficient time after the latter had actual or constructive knowledge thereof to have removed it in the exercise of ordinary care. Safeway Stores, Inc. v. Feeback, supra; Fuller v. Rahill, supra; Kassick v. Spicer, supra. Or the plaintiff must show the storekeeper negligently failed to inspect or maintain the premises, or did not use ordinary care in policing the premises. Safeway Stores, Inc. v. Keef, supra; J. C. Penney Co. v. Barrientez, supra; Williams v. Safeway Stores, Inc., supra.

■ We further conclude that if minds of reasonable men would differ or if it can reasonably be inferred from appellant's evidence that the storekeeper breached any of these duties, the question is then one of fact for the jury. J. C. Penney Co. v. Barrientez, supra; Williams v. Safeway Stores, Inc., supra.

■ In analyzing the facts of the present case in light of the foregoing, it must be kept in mind that we are reviewing an appeal from a sustention of a motion for judgment notwithstanding the verdict. Such motions, like demurrers and motions for directed verdict, require only the evidence favorable to the party moved against to be considered. See 12 O. S.1971 § 698 and Stillwater Milling Co. v. First Nat'l Bank, Okl., 391 P.2d 807 (1964).

■ We agree with appellant to the extent that the trial court properly let the case go to the jury. Although appellant did not plead appellee was negligent in failing to inspect (as the plaintiff specifically pled in Keef) which would be a conclusion, we find appellant did plead facts sufficient to bring her within the rules of Keef, Barrientez and Williams. For the trial court to sustain appellee's motion for judgment notwithstanding the verdict because appellant did not prove appellee or its employees placed the substance on the floor or how long it had been there, is to ignore that which the court said in Keef, Barrientez and Williams. That is, under some circumstances a storekeeper will be held liable where he is guilty of negligence in the operation of his store even though the plaintiff is unable to show who placed the substance on the floor or how long it had been there. In the present case we think "reasonable minds may differ in their inferences and conclusions therefrom, [therefore] the question, like the broader issue of whether defendants have performed their duty should be left to the

jury." J. C. Penney Co. v. Barrientez, supra.

We therefore conclude that the case was properly submitted to the jury, and it was error for the trial court to grant judgment notwithstanding the verdict. The cause is reversed and remanded to the trial court with directions to set aside appellee's judgment notwithstanding the verdict, and to reinstate the judgment on the verdict of the jury.

BRIGHTMIRE, P. J., concurs.

NEPTUNE, J., concurs in result.