956 F.2d 278
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Debra Ann MARTIN, Plaintiff-Appellant,
v.
WAL-MART STORES, INC., a foreign corporation, Defendant-Appellee.
 No. 9-5245.
 United States Court of Appeals, Tenth Circuit.
 Feb. 6, 1992.
 
 Before LOGAN, JOHN P. MOORE and BALDOCK, Circuit Judges.*
 ORDER AND JUDGMENT**
 BALDOCK, Circuit Judge.
 
 
 1
 Plaintiff-appellant Debra Ann Martin brought this action to recover damages for personal injuries sustained when she fell in the restroom of a department store operated by defendant Wal-Mart Stores, Inc., in Tulsa, Oklahoma. The case proceeded to trial, and the jury returned a verdict in favor of plaintiff. Defendant then filed a motion for judgment n.o.v., which was granted and this appeal followed. For the reasons set forth below, we affirm.
 
 
 2
 On the date of her accident, plaintiff and her daughter arrived at defendant's store at approximately 3:00 p.m. The store had been open since 12:00 noon. While in a restroom facility at about 3:15 p.m., plaintiff slipped on a liquid substance located on the tile floor as she was exiting a restroom stall. Defendant's store had a policy which required a "safety sweep" of the store "at least once every hour," but this policy had not been observed with respect to the restroom where plaintiff fell. Instead, that restroom was last cleaned at closing time the night before the accident.
 
 
 3
 At trial, defendant introduced deposition testimony of Michelle Cantrell, who, on the date of plaintiff's accident, was employed at defendant's store. Ms. Cantrell testified that she was in the restroom in question using the facilities ten to fifteen minutes before the accident. Tr. 206. According to Ms. Cantrell, she observed, in accordance with her assigned job duties, the floor area of the restroom to determine if there were any obstruction that would cause an accident and did not notice any water in the area where plaintiff fell.
 
 
 4
 The district court, in granting defendant's motion for judgment n.o.v., concluded that "the testimony of witness [Ms.] Cantrell was not rebutted ... [and] established that no foreign matter, such as that upon which plaintiff fell, was on the floor approximately 15 minutes before plaintiff fell so it remains to speculation and conjecture, and the evidence necessary to establish an inference of negligence is lacking." Appellant's App. at 4. Plaintiff appeals arguing that there was substantial evidence supporting the jury's verdict, i.e., no regular cleaning of the restroom, and the district court, in granting defendant's motion for judgment n.o.v., substituted its judgment of Ms. Cantrell's credibility for the jury's.
 
 
 5
 Our review of rulings on motions for judgment n.o.v. is de novo. Guilfoyle ex rel. Wild v. Missouri, Kan. & Tex. R.R., 812 F.2d 1290, 1292 (10th Cir.1987). Judgment n.o.v. is appropriate only when the evidence, taken in the light most favorable to the nonmoving party, points but one way, in favor of the moving party. Lucas v. Dover Corp., Norris Div., 857 F.2d 1397, 1400 (10th Cir.1988). In determining whether the grant of a motion for judgment n.o.v. was appropriate, the court must view the evidence and indulge all reasonable inferences in favor of the party opposing the motion and cannot weigh the evidence or pass upon the credibility of witnesses. Id.
 
 
 6
 As we construe Oklahoma's "slip and fall" cases, plaintiff had available two primary theories to hold defendant liable for her injuries. First, plaintiff could show that the condition which caused her fall in the restroom was created by a negligent act of defendant or its employees. Fuller v. Rahill, 496 P.2d 785, 788-89 (Okla.1972); Safeway Stores, Inc. v. Feeback, 390 P.2d 519, 520-21 (Okla.1964). Second, plaintiff could show that defendant allowed a dangerous condition to remain in the restroom, i.e., defendant had actual knowledge of the condition, see Rogers v. Hennessee, 602 P.2d 1033, 1035 (Okla.1979), or the condition existed for such a period of time that constructive knowledge of it could be attributed to defendant, see id.
 
 
 7
 Plaintiff does not argue that defendant created the condition in the restroom or that defendant had actual knowledge of the condition. Moreover, plaintiff does not assert that the condition existed in the restroom for a legally significant length of time. Instead, plaintiff's only theory is that she is entitled to prevail based on defendant's failure to inspect at regular intervals a restroom which, the parties agree, was clean before defendant's store opened for business.
 
 
 8
 There is a line of Oklahoma cases which have gradually developed and fleshed out an exception to the traditional requirement of actual or constructive notice in slip and fall cases. See White v. Wynn, 708 P.2d 1126, 1129 (Okla.1985); Lingerfelt v. Winn-Dixie Tex., Inc., 645 P.2d 485, 487-89 (Okla.1982); Kassick v. Spicer, 490 P.2d 251, 253-54 (Okla.1971); Safeway Stores, Inc. v. Keef, 416 P.2d 892, 894-95 (Okla.1966); J.C. Penney Co. v. Barrientez, 411 P.2d 841, 848 (Okla.1965) (citing Mahoney v. J.C. Penney Co., 377 P.2d 663, 671-74 (N.M.1962)); Glover v. Montgomery Ward & Co., 536 P.2d 401, 404-08 (Okla.Ct.App.1974). Plaintiff selectively cites to the Oklahoma courts' earliest attempts to articulate a rationale and rule for liability without satisfaction of the traditional notice requirement. However, it was not until the White and Lingerfelt cases that the Oklahoma Supreme Court had clearly worked out the contours and conditions of the exception. It is now clear that the exception is premised on the foreseeability of dangerous conditions resulting from the operations carried out on the invitor's premises. When the operating methods of an invitor are such that dangerous conditions, such as spills by patrons, are recurring or easy to anticipate the invitee need not show notice of the specific condition created. See, e.g., White, 708 P.2d at 1129 ("[W]hen an invitee has shown an invitor's self-service merchandising and marketing methods were such to create the reasonable probability that a dangerous condition would occur, the invitee need not prove notice of the specific condition thus created."); Lingerfelt, 645 P.2d at 488 ("When a shopper has shown that circumstances were such as to create a reasonable probability that a dangerous condition ... would occur, the invitee need not also prove that the business proprietor had notice of the specific hazard ... in order to show the proprietor breached his duty of due care to the invitee."). The holdings in White and Lingerfelt are in accordance with opinions in other jurisdictions. Pimentel v. Roundup Co., 666 P.2d 888, 892-93 (Wash.1983); Safeway Stores, Inc. v. Smith, 658 P.2d 255, 257-58 (Colo.1983); Bloom v. Fry's Food Stores, Inc., 636 P.2d 1229, 1232 (Ariz.Ct.App.1981); Wollerman v. Grand Union Stores, Inc., 221 A.2d 513, 515 (N.J.1966).
 
 
 9
 The earlier Oklahoma Supreme Court cases discussing elimination of the notice requirement did not expressly rely on the foreseeability principles ultimately clarified in White and Lingerfelt. However, the factual circumstances presented in those cases clearly fall within the ambit of the White and Lingerfelt mode-of-operation analysis. See Kassick, 490 P.2d at 253 (slip on fruit in a self-service grocery store, classic setting for application of mode-of-operation exception); Keef, 416 P.2d at 895 (same). More importantly, the legal theory of liability applied in those cases, "negligent failure to inspect," see Kassick, 490 P.2d at 253-54; Keef, 416 P.2d at 894, is entirely consistent with the mode-of-operation analysis. In order for a failure to inspect to constitute negligence, the consequences of the failure to inspect, i.e., the occurrence of a dangerous condition, must have been foreseeable. Trett v. Oklahoma Gas & Elec. Co., 775 P.2d 275, 279 (Okla.1989). The mode-of-operation analysis in White and Lingerfelt simply explains the factors which Oklahoma courts have recognized as bearing on the foreseeability of a dangerous condition.[1]
 
 
 10
 In this case, plaintiff presented no evidence whatsoever regarding defendant's pertinent operating methods, such as, e.g., defendant's sale of spillable merchandize permitted into the restrooms, the peculiar nature or arrangement of defendant's restroom facilities, or prior similar occurrences, which would indicate that dangerous conditions in defendant's restrooms were readily foreseeable. Defendant's operating methods are not matters that we or the trier of fact can speculate on. In essence, plaintiff established nothing more than a fall caused by an unidentified and unexplained substance in an ordinary public restroom. There are no Oklahoma cases waiving the traditional notice requirement on comparable facts.[2]
 
 
 11
 The case relied upon primarily by Plaintiff, Glover, is simply an early statement of the White and Lingerfelt mode-of-operation exception to the traditional notice requirement. In Glover, the plaintiff slipped on a clear substance while walking near the cafeteria of a store. The record revealed that drinks were sold in the cafeteria and drinks called "Iceys" were sold in a different part of the store. There was frequent spillage throughout the store, especially by children with "Iceys." The court concluded that the evidence was sufficient to submit the question of the store's negligence to the jury even though the plaintiff could not prove how long the substance had been on the floor.
 
 
 12
 Under the principles articulated in White and Lingerfelt, the evidence in Glover that the store provided drinks to customers and frequent spillage had occurred in the past sufficed to link the dangerous condition created to the mode of the store's operation and justified waiver of the notice requirement. In this case, however, there is no evidence of defendants' merchandizing and marketing methods or prior similar occurrences which could link the condition created to the nature of defendant's business operations. In the absence of such evidence, Glover provides no help to plaintiff's case.
 
 
 13
 Based on our review of the entire trial transcript the only arguable grounds for holding defendant responsible for plaintiff's injuries is constructive notice. However, plaintiff presented no direct or circumstantial evidence indicating how long the defect existed in the restroom. Evidence indicating that the defect was dirty, tracked through, or splattered would arguably permit an inference that it existed in the restroom for more than a short period of time. Cf. Fuller, 496 P.2d at 784-85. However, there is no such evidence in the record.
 
 
 14
 Plaintiff, in her opening brief, asserts that paper towels littered around the restroom led, over a period of time, to the accumulation of the liquid substance. However, plaintiff's assertion is based on speculation. There is no evidence indicating that the discarded paper towels were wet and water was running off them. Indeed, plaintiff herself testified at trial that the paper towels had no connection to the slippery substance causing her to fall. Tr. at 54. Consequently, we consider the evidence of scattered paper towels, which the dissent appears to find significant, immaterial to establishing defendant's liability for plaintiff's injury.
 
 
 15
 It is quite possible from the evidence in this case that the substance causing plaintiff's fall accumulated only moments before she arrived in the restroom. The lapse of time between when defendant's store opened and when plaintiff fell (approximately three hours) does not, standing alone, indicate how long the dangerous condition existed in the restroom since it is just as logical to assume that it existed for three minutes as it is to assume that it was present for three hours. See Mergendahl v. C.J. Gayfer & Co., 659 F.Supp. 351, 353 (S.D.Miss.1987). In the absence of some proof by plaintiff "giving, directly or by inference, some indication as to the length of time the peril had been in existence when [the plaintiff] received her injury ... there can be no liability here" on the basis of constructive notice. Hennessee, 602 P.2d at 1035-36.
 
 
 16
 The district court relied primarily on the testimony of Ms. Cantrell as entitling defendant to a judgment as a matter of law. However, as discussed above, the problem we see with plaintiff's case is not Ms. Cantrell's testimony but the deficiencies in plaintiff's evidence. Even if Ms. Cantrell's testimony is rejected as not credible or not probative, that does not cure the fact that plaintiff failed to establish defendant's actual or constructive knowledge of the condition in the restroom, or any circumstances that would justify waiver of the notice requirement.
 
 
 17
 Accordingly, the judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 LOGAN, Circuit Judge, dissenting:
 
 18
 I cannot agree that the district court properly granted defendant's motion for judgment n.o.v. because I believe plaintiff offered sufficient evidence to support the jury's verdict in her favor under a proper application of Oklahoma law.
 
 
 19
 Plaintiff's nonmedical evidence consisted of the testimony of plaintiff, her daughter, and Maxine Hathcock, a woman who was in the Wal-Mart restroom at the time of the accident. Defendant's nonmedical evidence consisted of the testimony of the Wal-Mart store's assistant manager, Bill Carr, and (by deposition) a former Wal-Mart employee, Michelle Cantrell, who claimed to have visited the restroom approximately fifteen minutes before the accident. In denying defendant's motion for a directed verdict at the close of plaintiff's evidence the district court believed plaintiff had established a case for the jury.
 
 
 20
 I sincerely believe that the state of this record now, under the concept that there wasn't any periodic inspection or sweeping in the record as it stands from 10:00 until 3:00 o'clock, 17 hours or whatever it was, with a lot of traffic, overflowing paper in the wastebasket, I think you've probably created a fact question for the jury.
 
 
 21
 III Supp.R. 138. The judge, however, anticipated that Cantrell's testimony for the defense likely would change matters:
 
 
 22
 But once--you don't have in this record the testimony of that Miss whatever her name is--
 
 
 23
 Mr. Holden: Michelle Cantrell.
 
 
 24
 The Court: Cantrell--at this time, but once it's in there and remains unrebutted you're going to have some problems.
 
 
 25
 Id. at 138-39.
 
 
 26
 In granting judgment n.o.v. after the jury returned a $110,000 verdict for plaintiff, the court clearly relied upon its view that Cantrell's testimony was reliable and unrebutted. Its order stated:
 
 
 27
 The Court concludes that as the testimony of witness Cantrell was not rebutted, Plaintiff failed to establish a prima facie case submissible to the trier of fact and the Defendant's Motion for Directed Verdict at the conclusion of all of the evidence should have been sustained. Witness Cantrell's testimony established that no foreign matter, such as that upon which the Plaintiff fell, was on the floor approximately 15 minutes before Plaintiff fell so it remains to speculation and conjecture, and the evidence necessary to establish an inference of negligence is lacking.
 
 
 28
 Appendix to Opening Brief of Plaintiff-Appellant at 16.
 
 
 29
 Thus, I focus first on whether Cantrell's testimony was reliable and whether it was rebutted. Cantrell testified that she was in the restroom approximately fifteen minutes before the accident, and on direct examination she was "absolutely positive" that there was no water on the restroom floor in front of the sinks, IV Supp.R. 8, the critical issue in the case. On cross-examination, Cantrell at first continued to be certain that she had checked the floor in front of the sinks and that there was not water anywhere on the floor. Id. at 20, 39, 42. She later acknowledged, however, that she had seen water "on the floor beside the sinks, between them." Id. at 42. This inconsistency raised at least a question regarding Cantrell's recollection or credibility.
 
 
 30
 More important, however, is the dramatic factual dispute between the witnesses for the two sides regarding the physical features of the restroom where plaintiff slipped and fell. Plaintiff testified that at the time of her fall the restroom had one sink, two stalls, and no diaper changing table. See II Supp.R. 27, 31, 32. Plaintiff's description of the restroom was corroborated by her other witnesses. See id. at 77, 80, 86. In contrast, Cantrell testified that the restroom had "left" and "right" sinks, see IV Supp.R. 32, and she drew a diagram of the restroom that explicitly shows two sinks, three stalls, and a diaper changing table, see id. ex. 3. Thus, on the question of whether Cantrell's testimony on the "water-on-the-floor" issue is believable, it seems to me critical whether she correctly remembers the restroom at all. Obviously the restroom plaintiff's witnesses describe is different from that Cantrell describes.
 
 
 31
 Wal-Mart's other witness, Bill Carr, did little to help defendant's case. He did testify that "[t]o the best of my knowledge there was [sic] two sinks in [the women's restroom] at all times." III Supp.R. 195. But he admitted on cross-examination that the bathroom had been changed and that his recollection of the sinks was incorrect. Id. at 200.[1]
 
 
 32
 To my mind, there is only one reasonable inference to explain the difference in the testimony: after plaintiff's injury defendant changed the restroom, and the witnesses were testifying about two different restrooms. At trial, defendant's attorney acknowledged that defendant had torn out a restroom and put in another one in a different location in the store. See id. at 195. Furthermore, plaintiff testified that when she went back to the restroom in 1990, over one year and four months after her accident, it had been changed--it then had two sinks, a new larger trash can, and a new diaper changing table. See II Supp.R. 68.
 
 
 33
 At a minimum, the testimony raised questions about the relevance and credibility of Cantrell's testimony. The credibility of a witness indisputably is an issue for the jury. Thus, as the majority appears to recognize, Cantrell's testimony regarding the condition of the floor shortly before plaintiff fell cannot support the grant of judgment n.o.v.
 
 
 34
 The majority nevertheless affirms the grant of judgment n.o.v. based on a view of Oklahoma negligence law that I believe is mistaken. The two primary theories of negligence liability elaborated in the majority opinion do not contravene those Oklahoma cases that establish that one way for a plaintiff in a slip and fall case to prove negligence is to show that the store owner negligently failed to inspect the premises. See Safeway Stores, Inc. v. Keef, 416 P.2d 892, 896 (Okla.1966) (jury instructions as a whole, which included plaintiff's allegation that defendant negligently "fail[ed] to inspect its floors at reasonable intervals so as to discover the [hazard] on the floor and remove it," correctly stated the law); Glover v. Montgomery Ward & Co., 536 P.2d 401, 408 (Okla.App.1974) (stating that plaintiff can prove negligence in three ways: (1) defendant negligently left a hazard on the floor; (2) defendant had actual or constructive knowledge of a hazard but failed to remove it; or (3) defendant "negligently failed to inspect or maintain the premises, or did not use ordinary care in policing the premises"). Even the most recent case cited by the majority makes clear that a store can be liable for negligent failure to inspect. White v. Wynn, 708 P.2d 1126, 1129 (Okla.1985) (citing Keef, 416 P.2d 892) (issue of negligent failure to inspect is a question of fact for the jury).
 
 
 35
 The majority opinion appears to acknowledge that liability can be based on negligent failure to inspect. It suggests, however, that a plaintiff can recover under this theory only if she establishes either that the defendant had actual or constructive notice of the hazard or that the so-called "mode-of-operation" exception to the notice requirement applies. But "mode-of-operation" deals with foreseeability. I read the cited Oklahoma cases as simply requiring some foreseeability of harm before a defendant can be negligent. Actual or constructive notice of a hazard certainly makes harm foreseeable. Likewise, a method of operation that creates a hazard also makes harm foreseeable. Nothing in the cited cases is contrary to the fact that in certain circumstances a failure to inspect for hazards can make harm foreseeable.
 
 
 36
 Thus, even under the majority's reading of the cases plaintiff should prevail. The evidence established that defendant's method of operation included providing restrooms for its customers. The nature of a restroom is that potentially slippery substances such as water and soap are present. This is particularly true when the restroom is small and the store busy, as the store's own hourly inspection rule would seem to recognize. Thus, defendant's method of operation made it foreseeable that hazardous conditions would be created in the restroom.
 
 
 37
 In the instant case, defendant admitted that on the day of plaintiff's injury it failed to comply with its own policy that required hourly safety inspections of the restroom. The hourly inspection policy established by this nationally prominent retailing operation is itself evidence the jury should be entitled to rely upon to establish a standard of care reasonably necessary to prevent the accrual of a dangerous situation in its restrooms. Compare Keef, 416 P.2d at 895-96 (floor last swept at 8:30 a.m., no subsequent policing of the area, plaintiff fell about 5:45 p.m.; judgment for plaintiff on negligent failure to inspect theory affirmed) with Kassick v. Spicer, 490 P.2d 251, 252, 254 (Okla.1971) (floor swept about 2:00 p.m., defendant inspected floor and observed no hazard about 3:45 p.m., plaintiff fell about 4:15 p.m.; because of lack of evidence of negligent failure to inspect judgment for plaintiff reversed).
 
 
 38
 The facts presented in the instant case include the district court's observation that "there was considerable customer traffic over the approximately three-hour period before [p]laintiff's fall," Appendix to Opening Brief of Plaintiff-Appellant at 13; that at the time of plaintiff's fall the trash can in the restroom was full and overflowing with paper towels littering the floor, see II Supp.R. 31, 69, 86; and defendant's admitted failure to inspect for hazards for over three hours before plaintiff's injury.
 
 
 39
 I reason that the Oklahoma cases cited above and defendant's safety sweep policy establish the standards, and that the facts presented here meet the requirements for a jury case. The district court was correct in denying a directed verdict at the close of plaintiff's case in chief. But the district court erred in ruling that the Cantrell testimony was unrebutted and had to be believed. The jury was entitled to disbelieve Cantrell's testimony, especially in view of the disparity between the descriptions of the restroom she gave and that given by plaintiff's witnesses.
 
 
 40
 A plaintiff establishes a prima facie case of negligence when she presents evidence that defendant had a duty to protect her from harm, that defendant breached that duty, and that defendant's breach proximately caused her injury. Goodwin v. Enserch Corp., No. 88-2204, slip op. at 6 (10th Cir. Nov. 26, 1991) (Oklahoma law). Clearly, defendant had a duty to exercise ordinary care to inspect and maintain in a reasonably safe condition the areas of its store used by customers. See, e.g., Glover, 536 P.2d at 408. Even if defendant's admitted failure to conduct hourly safety inspections is considered only circumstantial evidence, circumstantial evidence can prove breach of duty. See Goodwin, slip op. at 6. There was sufficient evidence of proximate cause, because "the jury could reasonably find a causal nexus between the negligent act and the resulting injury," McKellips v. Saint Francis Hosp., Inc., 741 P.2d 467, 471 (Okla.1987), and legal liability should be imposed on a store that violates its own policy reasonably designed to ensure the safety of its customers. This is especially so considering the difficulty almost any plaintiff will encounter in trying to prove how long a hazardous condition existed in a restroom before an accident occurred. (How many store customers will be able to recall the exact time they visited the store's restroom, assuming that the plaintiff, after her recovery, can identify some persons who visited the restroom on the particular day?)
 
 
 41
 In the instant case, judgment n.o.v. was improper because when the evidence is viewed in the light most favorable to plaintiff, as it must be, reasonable minds can differ on whether defendant was negligent.
 
 
 42
 I would reverse.
 
 
 
 *
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The dissent, citing Kassick and Keef, suggests that the failure to abide by a self-imposed inspection policy can in and of itself subject a store owner to liability independently of the traditional notice requirement and the mode-of-operation exception to that requirement. However, there is no expression of any such principle of self-imposed legal duties in Kassick and Keef, or in any other Oklahoma case. As already discussed, Kassick and Keef are simply early illustrations of the developing mode-of-operation exception to the notice requirement
 
 
 [2]
 The dissent suggests that the availability of a public restroom, standing alone, constitutes a mode-of-operation. We believe such a view fails to appreciate the fundamental distinction between the mere public availability of a premises, here the restroom, and the particular nature of, and operation carried out on, the premises. As discussed above, unnoticed dangerous conditions do not, simply by virtue of their existence on one's public premises, give rise to a duty to inspect. It is only when such conditions can be linked to the particular nature of the operations carried out on the premises by the owner can he be subject to liability for failure to inspect
 
 
 [1]
 Witness Carr's cross-examination testimony about the bathroom configuration was as follows:
 Q. All right. Sir, describe for me what you say are two sinks that were in that bathroom. Describe the sinks.
 A. I mean they're free standing, they're attached directly to the wall, nothing underneath them.
 Q. No legs or anything like that?
 A. No legs. They were on the wall.
 Q. They were on the wall, no legs, they were just straight in there?
 A. Right.
 Q. Was there a separate pipe--taking your recollection, going back to those?
 A. Sure.
 Q. Was there a pipe that was fairly well off to the side of one of those sinks where possibly one sink might have been prior to that time?
 A. I don't remember.
 Q. Is there a mirror in that bathroom? One or two mirrors over each sink?
 A. I couldn't--I really can't answer that question for you. I know that they do have mirrors above each sink, supposed to.
 Q. Are the sinks--let me ask you this then. With regard to these two sinks, they were identical, were they not?
 A. They're supposed to be, yes, sir.
 Q. Now, sir, let me--hold on a minute.
 Subsequent to this accident you didn't--the same sinks are in there that you think were there on the same day as the accident?
 A. As far as I know, sir.
 Q. Other than you-all now have changed out the whole bathroom?
 A. We've changed the entire store.
 Mr. Williams: I'll mark this as Plaintiff's Exhibit No. 5.
 Q. (By Mr. Williams) Let me hand you what has been previously marked as Plaintiff's Exhibit No. 5. What is that?
 A. That is a picture of a sink with a bar in the left hand corner, sir.
 Q. Sir? That's a sink?
 A. One sink that shows in the picture.
 Q. All right. This is another photograph--excuse me. Is it up there? I hand you what has been marked as Plaintiff's Exhibit No. 6, if I might. Do those two sinks appear to be the same?
 A. No, sir, they're different.
 Q. Is that your bathroom? Does it appear to be the ladies' bathroom?
 A. It appears to be, sir.
 Q. And aren't there stands under each sink?
 A. Yes, sir, there are.
 Q. So your recollection is incorrect, is it not?
 A. Yes, sir.
 Q. There's one mirror in there, isn't there?
 A. Yes, sir.
 Q. And, sir, down below doesn't it appear to be a plumbing pipe down below this sink that looks as if it has been capped off and that possibly one sink had been in there prior to those two sinks being put in?
 A. That appears to be a--yes, sir, that could be a plumbing pipe as in what we've disconnected the--one of the--hot water.
 Q. Yes, sir. So isn't it--repeat--there was one sink in there on that night, that day, that afternoon? There's only one mirror, and if it were centered to that one pipe, there would have been one sink with one mirror, isn't that correct?
 A. No, sir, there should have been two sinks to the best of my knowledge.
 Q. Sir, how many mirrors are there?
 A. There's one mirror, sir.
 Q. And that mirror would have been centered where one sink would be, wouldn't it, if you only had one sink in there?
 A. If you only had one sink, possibly.
 III Supp.R. 198-201.